IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

STEVEN R. GRABOFF, M.D.,

        Plaintiff,

v.

AMERICAN ASSOCIATION OF
ORTHOPAEDIC SURGEONS and
AMERICAN ACADEMY OF
ORTHOPAEDIC SURGEONS,

        Defendants.

CIVIL ACTION
NO. 12-5491

## OPINION

**Slomsky, J.**                                                                                                        May 2, 2013

### I.    INTRODUCTION

Before the Court is a Motion to Dismiss filed by the American Academy of Orthopaedic Surgeons and the American Association of Orthopaedic Surgeons (collectively "Defendant" or "AAOS"). (Doc. No. 5.) On April 12, 2012, a twelve-day jury trial commenced in a related case between Steven R. Graboff, M.D. ("Plaintiff" or "Dr. Graboff") and Defendant. Graboff v. Colleran Firm, No. 10–1710, 2013 WL 1286662, at *1 (E.D. Pa. Mar. 28, 2013). On April 27, 2012, the Jury rendered a verdict, finding that Defendant engaged in tortious conduct by portraying Plaintiff in a false light in an article published by Defendant in a newsletter and on its website. Id. Defendant's post-trial motion to overturn the jury verdict was denied. Id.

Following trial, Plaintiff filed this action against Defendants seeking declaratory relief and monetary damages as a result of the "continued tortious conduct" of Defendant. (Doc. No. 1 ¶ 1.) Plaintiff claims continued harm resulting from Defendant's failure to remove from the AAOS website the article which the Jury found portrayed him in a false light. (Id. ¶¶ 3-4.) In

response, Defendant filed the instant Motion to Dismiss pursuant to Federal Rule of Civil Procedure Rule 12(b)(6). (Doc. No. 5.) The Motion to Dismiss is now ripe for adjudication.[1] For reasons that follow, the Court will grant the Motion.

## II. FACTUAL BACKGROUND

The current matter stems from the previous false light claim that Plaintiff successfully litigated against Defendant. Thus, many of the facts from that case are relevant here. Plaintiff is a board certified orthopaedic surgeon who maintained an active orthopaedic clinical practice, provided forensic orthopaedic consulting services, and has served as an orthopaedic expert witness since 1985. Graboff, 2013 WL 1286662, at *1. Defendant "AAOS is a private organization whose membership is comprised primarily of orthopaedic surgeons. In June 2009, Plaintiff . . . was suspended from membership in the AAOS. The events surrounding the suspension involved Plaintiff's work as an expert in a medical malpractice action." Id. (citations omitted).

The AAOS published an article about the suspension of Plaintiff from the organization in the September 2009 issue of AAOS Now. Id. at *2 (citations omitted). AAOS Now is an AAOS publication sent to members in hard copy and electronically. Id. It is also available to the public on the AAOS website. Id. In the previous action, Plaintiff brought suit against Defendant asserting various claims, including the one for false light invasion of privacy. Id. (citations omitted). The Jury in the underlying action found in favor of Plaintiff and against AAOS on the false light claim. Id. at *3 (citations omitted). Plaintiff was awarded $196,000 in economic and non-economic damages. Id. at *1.

---

[1] In rendering this Opinion, the Court has considered: the Motion to Dismiss (Doc. No. 5), the Response of Plaintiff in Opposition (Doc. No. 7), and the Reply in Further Support of the Motion to Dismiss (Doc. No. 8).

Now, Plaintiff has brought this action alleging he is suffering continued harm because Defendant refuses to remove the offending article from the AAOS website, even after a Jury found that the article portrayed him in a false light. He has requested repeatedly that it be removed. (Doc. No. 1 ¶¶ 3-4.) Plaintiff contends that the failure of Defendant to remove the article constitutes a willful disregard for this Court's judgment as well as an intentional and malicious disregard for the rights of Plaintiff. (Id. ¶¶ 24-25.) Plaintiff seeks compensatory and punitive damages, as well as injunctive relief to enjoin Defendant from continuing to publish the article portraying him in a false light. (Id. ¶ 36.) As noted previously, Defendant seeks dismissal of the Complaint under Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 5.)

## III.   STANDARD OF REVIEW

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) is set forth in <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009). After <u>Iqbal</u>, it is clear that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" to defeat a Rule 12(b)(6) motion to dismiss. <u>Id.</u> at 1949; <u>see also</u> <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007). Applying the principles of <u>Iqbal</u> and <u>Twombly</u>, the Third Circuit in <u>Santiago v. Warminster Township</u> set forth a three-part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a 12(b)(6) motion to dismiss. 629 F.3d 121, 130 (3d Cir. 2010).

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

<u>Id.</u> (quoting <u>Iqbal</u>, 556 U.S. at 675, 679). "This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike

conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

A complaint must do more than allege Plaintiff's entitlement to relief, it must "show" such an entitlement with its facts. Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009) (citing Phillips v. Cnty of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679. The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

## IV. ANALYSIS

In the Motion to Dismiss, Defendant makes five arguments as to why Plaintiff cannot maintain the present suit. Specifically, Defendant argues: 1) res judicata bars his claim; 2) the "single publication rule" bars his claim; 3) Plaintiff seeks impermissible relief; 4) the Court lacks personal jurisdiction over Defendant; and 5) the Eastern District of Pennsylvania is not the proper venue for this matter. Because this claim is barred by res judicata and Plaintiff seeks impermissible relief, the Court need not address the remaining arguments.

### A. Res Judicata Bars the Claim Made in Count I of the Complaint

In Count I of the Complaint, Plaintiff brings a claim against Defendant alleging willful and deliberate false light invasion of privacy. (Doc. No. 1 ¶¶ 27-30.) In its Motion to Dismiss, Defendant argues that this claim is barred by res judicata because it is based on the same article about the suspension of Plaintiff from AAOS that was at issue in the previous litigation. (Doc. No. 5 at 6-8.) The doctrine of res judicata bars the re-litigation of this claim.

"Under the doctrine of res judicata, a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action." Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 322, 326 n.5 (1979). See also C.I.R. v. Sunnen, 333 U.S. 591, 597 (1948) ("[Res judicata] provides that when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound 'not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.'") (quotation omitted).

In the prior suit, Plaintiff and Defendant were both parties. Further, in the previous action Plaintiff brought the same false light invasion of privacy claim asserted in Count I of the Complaint. Moreover, this false light claim is based on the same article published on the AAOS website. The Jury in the prior litigation found for Plaintiff and against Defendant on the false light claim, and this Court denied Defendant's post-trial motion to overturn the Jury verdict. Thus, there was a judgment on the merits. Under the doctrine of res judicata, the judgment on the merits in the prior suit bars this second suit involving the same parties and the same cause of action. Accordingly, Count I of the Complaint in this case will be dismissed.

**B. The Injunctive Relief Sought in Count II is Impermissible**

In Count II of the Complaint, Plaintiff seeks declaratory and compensatory relief for harm he suffers from the failure of Defendant to remove the offending article from the AAOS website. (Doc. No. 1 ¶¶ 31-36.) Specifically, Plaintiff requests that this Court Order Defendant to remove the article from the AAOS website. (Id. ¶ 36.) In the Motion to Dismiss, Defendant

5

argues that injunctive relief of this nature is not permitted under Pennsylvania law.[2]  (Doc. No. 5 at 11-12.)

Instructive here is a decision of the Third Circuit interpreting Pennsylvania law, Kramer v. Thompson, 947 F.2d 666 (3d Cir. 1991).  In Kramer, Thompson hired Kramer as an attorney to bring a securities claim against a former broker.  Id.  During the course of the representation, Thompson accused Kramer of deliberately dissuading the F.B.I. from investigating the securities fraud complaint.  Id. at 667.  Thompson subsequently wrote numerous "critical and accusatory letters" about Kramer to private attorneys, judges, F.B.I. agents, prosecutors, and local media outlets.  Id.  In response, Kramer brought a libel action against Thompson in Philadelphia County, and a default judgment was entered against Thompson.  Id.

About two years later, Thompson learned that Kramer was involved in a separate civil matter.  Thompson again began writing critical and accusatory letters about Kramer to various people and entities including an attorney involved in the suit, the state Disciplinary Board, the federal judge hearing the case, the Philadelphia Inquirer and the United States Department of Justice.  Id.  Kramer filed a second libel action against Thompson in federal court based on this continuous conduct.  Id.  The District Court determined that Thompson's statements were per se libelous and directed a verdict for Kramer.  Id. at 668.  The jury awarded Kramer compensatory and punitive damages.  The court simultaneously entered a permanent injunction, prohibiting Thompson from continuing to make further libelous statements against Kramer.  Id.

Thompson appealed and the Third Circuit considered whether the Pennsylvania Supreme Court would permit an exception to the rule that equity will not enjoin defamation in cases where a jury had determined that the defendant's statements were libelous.  Id. at 676.  This was a

---

[2] The parties do not dispute that Pennsylvania law governs this case.  Accordingly, this Court will apply Pennsylvania law here.

matter of first impression under Pennsylvania law and the Third Circuit explained its role as looking "into the minds of the members of the Pennsylvania Supreme Court, and to ascertain their likely disposition of this case." Id. at 677.  The court found, "[a]lthough the prediction is difficult, the available evidence leads us to the conclusion that the Pennsylvania Supreme Court would overturn the injunction against prospective libel issued by the district court against Thompson." Id.  In reaching this conclusion, the court was persuaded by the following five factors:

> (1) "the maxim that equity will not enjoin a libel has enjoyed nearly two centuries of widespread acceptance at common law."
>
> (2) "although an exception to the general rule has been recognized in several cases where there has been a jury determination of the libelous nature of specific statements, we would do well not to overstate the degree of acceptance that has been accorded to this exception."
>
> (3) "even if we thought that the Pennsylvania Supreme Court might be inclined to adopt the jury determination exception, we doubt that this is the case in which it would do so."
>
> (4) "perhaps most importantly, we believe that the Pennsylvania Supreme Court would not adopt the jury determination exception if confronted with this case because, as Willing pointedly suggests, that Court continues to place great emphasis on the adequate remedy doctrine as a bar to equitable relief."[3]
>
> (5) "this case presents a stronger case than Willing for denying equitable relief."

Id. at 678-79.  The court also analyzed several cases from other jurisdictions which found "that an injunction can issue against further publication of defamatory statements once the plaintiff

---

[3] In Mazzocone v. Willing, the defendant hired the plaintiff lawyers to represent her in a worker's compensation claim, which was settled. 393 A.2d 1155, 1156 (Pa. 1978).  Thereafter, Willing believed that the attorneys diverted a portion of the settlement funds for their own benefit. Seeking vindication, she marched in the front of a courthouse where they practiced to protest the conduct of counsel. Id. at 1156-57.  The plaintiff lawyers then filed a complaint seeking an injunction against further demonstrations by Willing, which the trial court granted. Id. at 1157. This decision was affirmed by the Superior Court of Pennsylvania. Id.  The Supreme Court of Pennsylvania reversed, finding there was an adequate remedy at law, and for this reason injunctive relief was inappropriate. Id.  at 1158.

had secured a jury verdict." Id. at 676.[4] While the Third Circuit found "the reasoning and policies undergirding these cases quite persuasive. . . . that is not dispositive here." Id. Based on the five rationales listed above, the Third Circuit reversed the order of the district court to the extent it enjoined the defendant from repeating the libelous statements and from communicating with anyone doing business with the plaintiff. Id. at 680.

Although the Pennsylvania Supreme Court has yet to decide whether an injunction is proper in a defamation case, a trial court has followed the reasoning of Kramer. See Angelico v. Lehigh Valley Hosp., Inc., No. 1997-C-1671, 2005 WL 5163656 (Pa. Ct. Com. Pl. Jan. 1, 2005) (citing Kramer) ("Additionally, in keeping with the venerable common-law rule that equity will not enjoin a defamation, courts of this Commonwealth will not accord injunctive relief to proscribe publication of libelous materials.")

Despite arguments of Plaintiff to the contrary,[5] the Third Circuit's Kramer decision is directly on point here. Pennsylvania law governs this case. The Third Circuit in Kramer predicted that the Pennsylvania Supreme Court will adhere to the traditional, common law principle that equity will not enjoin a defamation, especially when a party has an adequate remedy at law in the form of money damages. Kramer, 947 F.2d at 675. The continuous conduct of Thompson in making libelous written statements about Kramer is comparable to the continued

---

[4] They are: Flint v. Hutchinson Smoke Burner Co., 19 S.W. 804, 806 (Mo. 1892); Wolf v. Harris, 184 S.W. 1139, 1141-42 (Mo. 1916); Ryan v. Warrensburg, 117 S.W.2d 303, 308 (Mo. 1938); Downey v. United Weatherproofing Inc., 253 S.W.2d 976, 983 (Mo. 1953); O'Brien v. Univ. Cmty. Tenants Union, 327 N.E.2d 753 (Ohio 1975); Retail Credit Co. v. Russell, 218 S.E.2d 54 (Ga. 1975); Advanced Training Sys. v. Caswell Equip. Co., 352 N.W.2d 1 (Minn. 1984).

[5] Plaintiff argues that following the jury verdict in the previous action, "the AAOS has republished the offending story about Dr. Graboff [and that] . . . [e]ach republication. . . constitutes a separate count of libel." (Doc. No. 7 at 7.) The Court is not persuaded by Plaintiff's argument that a republication occurred. Rather, the Court views the conduct of the AAOS as continuous because this suit is based on the same publication that was at issue in the previous action.

publication of the AAOS Now article about Plaintiff in this case.  Plaintiff received the benefit of a remedy at law when the Jury awarded him $196,000 in damages for the false light claim brought against the AAOS in the prior action.  Thus, under Pennsylvania law, Plaintiff seeks impermissible injunctive relief for a false light claim.  Accordingly, this Court cannot Order Defendant to remove the offending article from the AAOS website.[6]

**V.     CONCLUSION**

For reasons stated above, the Complaint will be dismissed.  Count I of the Complaint is barred by res judicata.  The injunctive relief sought in Count II of the Complaint is impermissible.  Therefore, the Court will grant the Motion to Dismiss on both Counts.

An appropriate Order follows.

---

[6] In footnote 4, supra, the Court has cited cases supporting Plaintiff's position.  This Court, however, is bound to follow the law as pronounced by the Third Circuit.  Only that Court can revisit the holding in Kramer.  Although the holding in Kramer may appear harsh given the Jury's verdict, this Court is still bound by the Kramer decision.